**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBIN STEVEN, SEAN MUNGIN and DEVONNE McMORRIS on behalf of themselves, all others similarly situated, and the general public, | |
| Plaintiffs, | Case No.: 18-cv-6500 |
| v. | The Hon. Jesse M. Furman |
| CARLOS LOPEZ & ASSOCIATES, LLC, CARLOS LOPEZ, individually | <u>ORAL ARGUMENT REQUESTED</u> |
| Defendants. | |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**
**<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

LEGAL STANDARD............................................................................................. 3

ARGUMENT ......................................................................................................... 4

I.  PLAINTIFFS' CLAIMS DO NOT PLAUSIBLY ALLEGE A DATA BREACH ........... 4

II.  PLAINTIFFS DO NOT HAVE STANDING TO BRING A CLAIM ............................. 6

    A.  Plaintiffs Have Not Identified a Concrete, Particularized Injury that Is
    Actual or Certainly Impending ............................................................. 7

    B.  Expenses Voluntarily Incurred to Protect Against Possible Future Harm
    Do Not Confer Standing ...................................................................... 10

III.  PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS ON BEHALF
    OF STATEWIDE CLASSES FOR FLORIDA, TEXAS, MAINE, AND NEW
    JERSEY ............................................................................................. 12

IV.  PLAINTIFFS FAIL TO STATE CLAIMS FOR NEGLIGENCE AND
    NEGLIGENCE *PER SE* UNDER CALIFORNIA AND NEW YORK LAW ............... 12

V.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR
    COMPETITION LAW ......................................................................... 14

VI.  NEW YORK'S BREACH NOTIFICATION STATUTE DOES NOT PROVIDE
    A PRIVATE RIGHT OF ACTION ......................................................... 14

CONCLUSION.................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*154 E. 62 LLC v. 156 E 62nd St. LLC*,
  No. 155966/2016, 2017 N.Y. Misc. LEXIS 2860 (N.Y. Sup. Ct. July 21,
  2017) .................................................................................................................................13

*Abdale v N. Shore-Long Is. Jewish Health Sys., Inc.*,
  19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) .................................................................................15

*Akins v. Glens Falls City School Dist.*,
  53 N.Y2d 325 (1981) ..........................................................................................................13

*Allison v. Aetna, Inc.*,
  No. 09-2560, 2010 U.S. Dist. LEXIS 22373 (E.D. Pa. Mar. 9, 2010).....................................8

*Amburgy v. Express Scripts, Inc.*,
  671 F. Supp. 2d 1046 (E.D. Mo. 2009)..................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S.662 (2009)........................................................................................................3, 4

*Bailey v. Patterson*,
  369 U.S. 31 (1962)............................................................................................................12

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ...............................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................3

*Chambliss v. Carefirst, Inc.*,
  189 F. Supp. 3d 564 (D. Md. 2016) ......................................................................................8

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) .................................................................................................*passim*

*Cruz v. TD Bank, N.A.*,
  22 N.Y.3d 61 70-71 (2013)................................................................................................15

*Fero v. Excellus Health Plan, Inc.*,
  304 F. Supp. 3d 333 (W.D.N.Y. 2018) ................................................................................10

*Gilot v. Equivity*,
  No. 18-CV-3492 (WFK), 2018 U.S. Dist. LEXIS 128517 (E.D.N.Y. July 30,
  2018) ................................................................................................................................7, 8

TABLE OF AUTHORITIES
(continued)

Page(s)

*Hammond v. Bank of N.Y. Mellon Corp.*,
No. 08-civ-6060 (RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June
25, 2010) .................................................................................................................8, 13

*Hinton v. Heartland Payment Sys., Inc.*,
No. 09-594 (MLC), 2009 U.S. Dist. LEXIS 20675 (D.N.J. Mar. 16, 2009) ...........................8

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................................12

*In re Science Appls. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
45 F. Supp. 3d 14 (D.D.C. 2014) ...........................................................................................11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
66 F. Supp.3d 1154 (D. Minn. 2014) .......................................................................................5

*In re U.S. OPM Data Sec. Breach Litig.*,
266 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................................9, 10

*Johnson v. Honeywell Int'l Inc.*,
179 Cal. App. 4th 549 (2009) .................................................................................................13

*Khan v. Shiley Inc.*,
217 Cal. App. 3d 848 (1990) ..................................................................................................13

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ............................................................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................................6

*Missud v. Oakland Coliseum Joint Venture*,
No. 12-02967 JCS, 2013 U.S. Dist. LEXIS 29915 (N.D. Cal. Mar. 5, 2013) ......................13

*Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC*,
No. 17-cv-5376 (PKC), 2018 U.S. Dist. LEXIS 128978 (S.D.N.Y. July 31,
2018) .......................................................................................................................................11

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ................................................................................................................12

*Peters v. St. Joseph Servs. Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) ........................................................................................8

*Randolph v. ING Life Ins. & Annuity Co.*,
486 F. Supp. 2d 1 (D.D.C. 2007) ..............................................................................................8

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Reilly v. Ceridian Corp.*,
　664 F.3d 38 (3d Cir. 2011).................................................................................8, 11

*Ross v. AXA Equitable Life Ins. Co.*,
　115 F. Supp. 3d 424 (S.D.N.Y. 2015) (Furman, J.)....................................................4

*Sackin v. TransPerfect Global, Inc.*,
　278 F. Supp. 3d 739 (S.D.N.Y. 2017).....................................................................10

*Shafran v. Harley-Davidson*,
　No. 07 Civ. 01365, 2008 U.S. Dist. LEXIS 22494 (S.D.N.Y. Mar. 24, 2008)........................13

*Sheehy v. Big Flats Community Day*,
　73, N.Y.2d 629 (1989)...................................................................................15

*Smith v. Sabre Corp.*,
　No. 2:17-cv-05149-SVW-AFM, 2017 U.S. Dist. LEXIS 221783 (C.D. Cal.
　Oct. 23, 2017) ........................................................................................14

*Spokeo, Inc. v. Robins*,
　136 S. Ct. 1540 (2016)...................................................................................7

*Stapleton v. Tampa Bay Surgery Ctr., Inc.*,
　No. 8:17-cv-1540-T-30AEP, 2017 U.S. Dist. LEXIS 139661 (M.D. Fla. Aug.
　30, 2017) ..............................................................................................8

*Storm v. Paytime, Inc.*,
　90 F. Supp. 3d 359 (M.D. Pa. 2015) ......................................................................8

*Strautins v. Trustwave Holdings, Inc.*,
　27 F. Supp. 3d 871 (N.D. Ill. 2014) ......................................................................8

*Susan B. Anthony List v. Driehaus*,
　134 S. Ct. 2334 (2014)...................................................................................4

*Tomscha v. GSA*,
　No. 15-CV-7326 (AJN), 2016 U.S. Dist. LEXIS 80875 (S.D.N.Y. June 21,
　2016) ..................................................................................................11

*U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*,
　No. CIV-13-1499, 2014 U.S. Dist. LEXIS 103608 (D. Minn. July 30, 2014) ......................8

*U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*,
　1 Cal 3d 586 (1970) ...................................................................................13

TABLE OF AUTHORITIES
(continued)

Page(s)

*Warth v. Seldin,*
  422 U.S. 490 (1975)...................................................................................................6

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) .................................................................................................4

**Statutes**

California Business and Professions Code § 17204 ...................................................14

California Civil Code § 1798.82(g) ............................................................................5

California Evidence Code § 669(2) ...........................................................................13

New York General Business Law §
  899-aa(2)(1)(c)..........................................................................................................5
  899-aa(2)(6) .............................................................................................................14

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Carlos Lopez & Associates, LLC and Carlos Lopez move to dismiss the First Amended Complaint for lack of standing for failure to state a claim.

## INTRODUCTION

This case arises from an inadvertent email that never "left the building."

In June 2018, an employee of Carlos Lopez & Associates, LLC ("CLA") accidentally sent an email containing identifying information about current and former CLA employees internally to a distribution list that included only current employees of CLA.  Mr. Robin Steven, Mr. Sean Mungin, and Ms. Devonne McMorris, current and former employees of CLA (collectively, "Plaintiffs"), allege that this accidental internal email amounts to exposure of their personally identifiable information ("PII"), entitling them to monetary damages and injunctive relief.  Plaintiffs also seek to represent a class of "all others similarly situated" whose information was accidentally disclosed.

At the most basic level, Plaintiffs fail to tie this "data breach" case to any actual breach. Notwithstanding the Complaint's lengthy description of what are commonly known to be "data breaches"—involving hackers, intentional stealing of information for nefarious purposes, and shady networks of data pirates—the Complaint in this case includes no allegations of an outside intrusion into CLA's computer systems.  (First Amended Complaint ("Complaint" or "FAC") ¶¶ 5, 20-24, ECF No. 18.)  Nor are there any allegations that any CLA employee accessed Plaintiffs' information or that Plaintiffs' information was exposed to any persons who are not employed by CLA.  (*Id.*)  Indeed, the Complaint does not even allege that any *internal* personnel actually saw the data.  Rather, Plaintiffs allege that employee information was disclosed internally to CLA's approximately 100 employees.  CLA's employees who received the email are medical professionals and paraprofessionals who provide mental health services to veterans,

service members, family members, and other community members.  (*Id*. ¶¶ 1-2.)  Working with,

and safeguarding, private information is routine for them.  It is simply implausible to believe that

CLA's employees, whose jobs require safeguarding PII, would improperly access Plaintiffs' PII

and use the PII of their colleagues in order to steal their identities, commit healthcare fraud, or

otherwise profit.  This basic failure of pleading warrants dismissal.

Notably absent from the complaint are any allegations that Plaintiffs have suffered an

injury in fact or that they face certainly impending harm that is fairly traceable to CLA and the

alleged disclosure of Plaintiffs' information internally within CLA.  Plaintiffs do not plead that

their identities have been stolen, that anyone has fraudulently filed a tax return in their names,

that they have been denied credit as a result of their information's exposure, or any other injury

in fact.  Instead, Plaintiffs list highly speculative "dangers" and generalized examples of

potential harm that Plaintiffs may, at some unspecified date, face.  (*Id*. ¶¶ 39-49.)  Nevertheless,

Plaintiffs attempt to assert claims for negligence, negligence *per se*, and violations of California

and New York consumer protection laws on behalf of themselves and the putative class and

subclasses.  (*Id*. ¶¶ 51-101.)  In the absence of any actual injury, Plaintiffs simply list as

"damages" "actual damages, punitive damages, statutory damages, [and] exemplary damages.

(*Id*. ¶ 24.)  In light of Plaintiffs' failure to plead any injury, the Complaint warrants dismissal for

lack of standing.

In another failure of standing, Plaintiffs improperly seek to represent classes of which

they are not members.  Plaintiffs include only residents of New York and California.  (*Id*. ¶¶ 9-

11.)  Yet, they bring class claims under the laws of Florida, Texas, Maine, and New Jersey for

negligence and negligence *per se*.  Even assuming that Plaintiffs were able to establish standing,

which they cannot, they certainly cannot seek to represent statewide classes in Florida, Texas,

Maine, and New Jersey seeking redress under the laws of those states because Plaintiffs are not members of those statewide classes.

That Plaintiffs failed to allege that they have suffered any harm due to the alleged exposure of their PII is also fatal to any claims of negligence or negligence *per se*.  It is axiomatic that without injury, no cause of action for negligence will lie.  Just as hypothetical future harms are insufficient to allege the requisite injury for standing purposes, they are insufficient for the purposes of stating a claim for negligence.  Similarly, Plaintiffs claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"), fails because Plaintiffs' have not alleged any economic injury as required to state a claim under the UCL.

Finally, Plaintiffs claims premised on New York's Data Protection Statute, N.Y. Gen. Bus. Law ("GBL") § 899-aa(2), must be dismissed because that statute does not provide for a private right of action.

## LEGAL STANDARD

CLA moves to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to the petition's well-pleaded factual allegations.  *Ashcroft v. Iqbal*, 556 U.S.662, 679 (2009).  Those well-pleaded factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In making this plausibility determination, while the Court must accept factual allegations as true, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (citation omitted).  Mere labels, conclusions, or formulaic recitations of a cause of action's elements are insufficient to state an actionable claim. *Twombly*, 550 U.S. at 555.

To demonstrate standing—and thus subject matter jurisdiction under Rule 12(b)(1)—
Plaintiff must show (1) an injury in fact, (2) a causal connection between the injury in fact and
the defendant's action, and (3) that the injury is redressable.  *Susan B. Anthony List v. Driehaus*,
134 S. Ct. 2334, 2341 (2014).  The Court evaluates standing based on the facts alleged in the
complaint and cannot "create its own jurisdiction by embellishing otherwise deficient allegations
of standing."  *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).  That a suit may be a class
action does not alter the standing inquiry and named plaintiffs who purport to represent a class
must plausibly allege and show that they have been injured personally.  *See Ross v. AXA
Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 432 (S.D.N.Y. 2015) (Furman, J.), *citing Lewis v.
Casey*, 518 U.S. 343, 357 (1996).  "An allegation of future injury is sufficient to establish
standing only "if the threatened injury is 'certainly impending' or there is a 'substantial risk' that
the harm will occur." *Id.* at 433, *quoting Susan B. Anthony List,* 134 S. Ct. at 2341.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS DO NOT PLAUSIBLY ALLEGE A DATA BREACH

Although Plaintiffs describe the alleged incident on July 29, 2018 as a "data breach"
(FAC ¶ 24), they have not alleged any conduct that constitutes such a breach.  While the Court
must accept Plaintiffs' factual allegations as true in making its plausibility determination, it need
not accept Plaintiffs' unsupported legal conclusion that a "data breach" occurred.  *See Iqbal*, 556
U.S. at 678 (holding that while factual allegations must be accepted as true, a court is not
required to accept legal conclusions as true).

Using the definition of "breach of the security system" under both New York and
California law as a touchstone, it is clear that Plaintiffs have failed to allege that any breach
occurred.  Under New York law, certain factors are considered to determine whether a data
breach has taken place:  (1) indications that the information is in the physical possession and

control of an unauthorized person; (2) indications that the information has been downloaded or copied; or (3) indications that the information was used by an unauthorized person, such as fraudulent accounts opened or instances of identity theft reported.  *See* GBL § 899-aa(2)(1)(c).  Plaintiffs have not alleged that their PII is in the physical possession or control of any unauthorized person.  Nor have they alleged that their PII was downloaded or copied by any employee of CLA.  And, Plaintiffs have not alleged that their PII has been used in an unauthorized manner—notably absent from the Complaint are any allegations of actual fraudulent activity or identity theft.

Plaintiffs have also failed to allege a breach under California's definition.  California law provides that good faith acquisition of personal information by an employee is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosures.  *See* Cal. Civ. Code § 1798.82(g).  Plaintiffs do not allege that any acquisition of their PII by CLA employees was in bad faith.  Rather, CLA employees mistakenly acquired Plaintiffs' PII and Plaintiffs allege at most that any disclosure was negligent.  Also missing from the Complaint are allegations that Plaintiffs' PII was subject to further unauthorized disclosure.

Further, data or security breaches usually involve the exposure of PII to third parties or the public, often due to the criminal interference in a company's computer systems.  *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp.3d 1154, 1157-58 (D. Minn. 2014) ("This case arises out of one of the largest breaches of payment-card security in United State retail history:  over a period of more than three weeks during the 2013 holiday shopping season, computer hackers stole credit- and debit-card information and other personal information for approximately 110 million customers.").  Plaintiffs make no equivalent allegations here.

What Plaintiffs do allege, in contrast, is that a spreadsheet that stored Plaintiffs' PII was inadvertently sent to employees of CLA.  The Complaint sketches out a series of events that is vastly different, both in scale and quality, than the exposure of PII to unknown third parties or the public seen in actual data breach cases.  There are no allegations that Plaintiffs' PII was actually provided to any person who is not employed by CLA or to any persons whom the Court could fairly assume would use Plaintiffs' PII in criminal ways.  Rather, the employees who may have had access to Plaintiffs' PII are entrusted with the PII of CLA's clients daily.  Absent any factual allegations to support that a "data breach" took place, Plaintiffs' claims hold no merit and the Complaint should be dismissed in its entirety.

## II.      PLAINTIFFS DO NOT HAVE STANDING TO BRING A CLAIM

Plaintiffs' allegations of uncertain future harm do not satisfy the standing requirements of Article III, Section 2 of the U.S. Constitution.  Article III, Section 2 limits federal courts' jurisdiction to actual cases and controversies.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  This limitation underpins the doctrine of standing, that asks "whether the litigant is entitled to have the court decide the merits of the dispute of particular issues."  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Id.*

The "irreducible constitutional minimum of standing" begins with an injury in fact, that must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citation omitted).  If harm is threatened, it must be "certainly impending."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). Moreover, that concrete and particularized, actual, or certainly impending injury must be "'fairly traceable to the challenged action[,] and redressable by a favorable ruling.'"  *Id.* at 1140-41 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  The Supreme Court

reaffirmed these principles when it issued *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), reversing the Ninth Circuit for failing to properly analyze the standing requirements.  The Court emphasized that an injury sufficient to establish standing must be both "particularized" and "concrete," which includes the requirement that it "must be 'de facto'; that is, it must actually exist."  *Id*. at 1548.  When the Court uses the adjective "'concrete,'" it "mean[s] to convey the usual meaning of the term—'real,' and not 'abstract.'"  *Id.* (citations omitted).

Here, Plaintiffs allege no injury in fact that is fairly traceable to CLA.  Instead, Plaintiffs claim that some injury—that is, "potential identity theft" and credit damage—might befall them in the future.  (FAC ¶¶ 39-49.)  That is insufficient.  Nor is it sufficient to allege the voluntary outlay of costs to protect against the potential threat of future harm—like the time and financial resources Plaintiffs claim they might spend defending against identity theft.  (*Id*. ¶ 50.)  None of these alleged harms constitute "injury" in connection with the various causes of action asserted by Plaintiffs.

### A.     Plaintiffs Have Not Identified a Concrete, Particularized Injury that Is Actual or Certainly Impending

Plaintiffs do not allege that they have actually suffered identity theft, tax fraud, or denial or loss of credit.  Instead, Plaintiffs try to predicate injury on claims of threatened future injury that are too speculative to support Article III standing.  For standing, a future injury must be certainly impending, and not purely speculative.  *See Clapper*, 568 U.S. at 409 (allegations of "possible future injury are not sufficient" (citation and internal quotation marks omitted)); *see also Gilot v. Equivity*, No. 18-CV-3492 (WFK), 2018 U.S. Dist. LEXIS 128517, at *4-5 (E.D.N.Y. July 30, 2018).

The vast majority of courts that have confronted speculative claims like these, based on nothing more than the risk of future identity theft, dismiss them.[1]  This is because risk of identity theft—even if there is an objectively reasonable likelihood of that risk—without more, is not a "certainly impending" injury.  *See Clapper*, 133 S. Ct. at 1147 (overturning circuit court's "objectively reasonable likelihood" standard); *see also Gilot*, 2018 U.S. Dist. LEXIS 128517, at *3-5 (holding that allegations of possible future injury, without more, do not satisfy the injury in fact requirement for Article III standing).

To hold otherwise in this case would endorse the position the Supreme Court rejected in *Clapper v. Amnesty International USA*.  In that case, respondents challenged the Foreign Intelligence Surveillance Act of 1978, that permitted surveillance of individuals who were not

---

[1] The list of cases so holding is long.  *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 275-76 (4th Cir. 2017) (holding that allegations that 33% of those affected by data breach may be victims of identity theft insufficient to establish a substantial risk of harm and confer standing); *Stapleton v. Tampa Bay Surgery Ctr., Inc.*, No. 8:17-cv-1540-T-30AEP, 2017 U.S. Dist. LEXIS 139661, at *5-6 (M.D. Fla. Aug. 30, 2017) (finding no imminent injury and thus no standing when plaintiffs could not identify a single proposed class member who had their sensitive information misused after data breach); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44–46 (3d Cir. 2011) (finding that "[i]n data breach cases where no misuse is alleged, [ ] there has been no injury"); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 570 (D. Md. 2016) (holding that the "mere loss of data . . . does not constitute an injury sufficient to confer standing"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 366 (M.D. Pa. 2015) (finding no standing where plaintiffs did not allege that they actually suffered any form of identity theft as a result of the defendant's data breach); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 853–54 (S.D. Tex. 2015) (finding no standing where plaintiff did not allege actual identity theft or fraud despite the possibility "that fraudulent use of her personal information could go undetected for long periods of time"); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876–77 (N.D. Ill. 2014) (finding that data breach did not satisfy injury in fact requirement and could not support a finding of "imminent" risk of harm); *U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*, No. CIV-13-1499 (SRN/FLN), 2014 U.S. Dist. LEXIS 103608, at *16 (D. Minn. July 30, 2014) ("[A] majority of the courts . . . hold that plaintiffs whose confidential data has been exposed, or possibly exposed, by theft or a breach of an inadequate computer security system, but who have not yet had their identity stolen or their data otherwise actually abused, lack standing to sue the party who failed to protect their data."); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-civ-6060 (RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *6-7 (S.D.N.Y. June 25, 2010) ("Plaintiffs here do not have Article III standing (*i.e.*, there is no 'case or controversy') because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information."); *Allison v. Aetna, Inc.*, No. 09-2560, 2010 U.S. Dist. LEXIS 22373, at *25 (E.D. Pa. Mar. 9, 2010) (finding lack of standing because plaintiff's "alleged injury of an increased risk of identity theft is far too speculative"); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052 (E.D. Mo. 2009) ("[P]laintiff surmises that, as a result of the security breach, he faces an increased risk of identity theft at an unknown point in the future.  On the facts as alleged in the Complaint, it cannot be said that the alleged injury to plaintiff is imminent."); *Hinton v. Heartland Payment Sys., Inc.*, No. 09-594 (MLC), 2009 U.S. Dist. LEXIS 20675, at *3 (D.N.J. Mar. 16, 2009) (*sua sponte* dismissing case because plaintiff's allegations of increased identity-theft and fraud risk "amount to nothing more than mere speculation"); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) ("Plaintiffs' allegations therefore amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft.").

"United States persons" and who were believed to be located outside the United States. *Id*. at

1142.  When challenged on standing, the respondents argued they would likely engage in

sensitive communications with individuals who would be targets of surveillance under the Act,

and that there was "an objectively reasonable likelihood that their communications will be

acquired . . . at some point in the future." *Id.* at 1143.  The Supreme Court concluded, however,

that this "theory of *future* injury is too speculative to satisfy the well-established requirement that

threatened injury must be 'certainly impending.'" *Id.*

Here, Plaintiffs allege no more than the kind of speculative injury at issue in *Clapper*.

As pleaded, the facts do not support a plausible inference that Plaintiffs' data will be misused.

Plaintiffs do not allege that the exposure of Plaintiffs' PII was intentional and they do not plead

any facts that would support an inference that anyone at CLA who received the email is likely to

use their PII for criminal purposes.  *See In re U.S. OPM Data Sec. Breach Litig.*, 266 F. Supp. 3d

1, 33-35 (D.D.C. 2017) (holding that threat of future identity theft was not imminent because

plaintiffs did not plead facts supporting the inference that it was the intent of the foreign

cybercriminals to use their personal data to commit identity theft).  There are no allegations that

Plaintiffs' PII was accessed by anyone other than CLA employees.  (FAC ¶¶ 5, 20.)  And,

Plaintiffs have not claimed that the alleged breach was due to any criminal conduct or that any

third-party intruders were responsible.  (*Id.* ¶¶ 5, 20.)  While Plaintiffs do list types of harm that

others have speculated could occur in the context of theft or public exposure of PII, they fail to

explain how these harms are probable or imminent when the only alleged exposure of PII was to

medical professionals who are trusted to handle the PII of their clients on a routine basis.  *See In

re U.S. OPM,* 266 F. Supp. 3d at 33-35 (distinguishing between data breaches by domestic

hackers targeting PII, when an inference of imminent future identity theft is plausible, and when it is not).

Plaintiffs' allegations here are in stark contrast to the few cases in this circuit when standing has been found on a theory of threatened future injury in the data breach context and this Court should decline to find standing under the present circumstances. *Cf. Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333, 345 (W.D.N.Y. 2018) (threat of future harm was not speculative when there was evidence that PII was targeted by hackers in an attack on a healthcare provider's security systems and plaintiffs' personally identifying information was found for sale on the "Dark Web"); *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017) (harms alleged were sufficiently imminent when plaintiffs alleged their PII was provided directly to cyber criminals because the most likely and obvious motivation for hacking was to use plaintiffs' information nefariously or sell it to someone who would). Here, Plaintiffs' plead no facts to support an inference that their claim of possible future identity theft is imminent, as a result they do not have standing, and their claims must be dismissed. *See In re U.S. OPM*, 266 F. Supp. 3d at 34-35.

**B.**     **Expenses Voluntarily Incurred to Protect Against Possible Future Harm Do Not Confer Standing**

In *Clapper*, the Supreme Court also rejected the notion that parties have standing when they "take costly and burdensome measures to protect" against potential future harm. *Clapper*, 133 S. Ct. at 1151. The Court specifically rejected the Second Circuit's position that "plaintiffs have established that they suffered *present* injuries in fact . . . stemming from a reasonable fear of *future* harmful [] conduct." *Id.* (internal quotations and citation omitted). After *Clapper*, it is clear that alleged losses, no matter how reasonable, are not "fairly traceable" to a defendant's actions if willingly incurred to protect against a possibility of future harm. *Id.* at 1152–53.

It is therefore insufficient to allege, as Plaintiffs do, that they and putative class members "must now attempt to safeguard themselves and their families from unknown but certainly impending future crimes." (FAC ¶ 28.)  Assuming Plaintiffs have already spent any resources to "safeguard themselves"—which the Complaint does not suggest that they have—their costs are still insufficient to create an injury in fact, because a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper*, 133 S. Ct. at 1151.[2]  "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Clapper*, 133 S. Ct. at 1151; *see also Tomscha v. GSA*, No. 15-CV-7326 (AJN), 2016 U.S. Dist. LEXIS 80875, at *5-6 (S.D.N.Y. June 21, 2016) ("[P]laintiff may not evade the 'actual or imminent' injury requirement of Article III by citing subjective fears unrelated to the objective probability of harm.  In other words, if the harms suffered are not objectively actual or imminent, a plaintiff cannot argue that his (disproportionate) subjective assessment of the situation creates an actual or imminent harm, whether it be in the form of emotional distress or preventive cost"); *see Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC*, No. 17-cv-5376 (PKC), 2018 U.S. Dist. LEXIS 128978, at *4-6 (S.D.N.Y. July 31, 2018) (dismissing complaint because plaintiff's decision not to sell its products on web-based marketplace was voluntary and based upon a hypothetical future harm).

---

[2] *See also In re Science Appls. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014) ("There is, after all, nothing unreasonable about monitoring your credit after a data breach. . . .  But the Supreme Court has determined that proactive measures . . . do not create an injury in fact . . . ."); *Reilly*, 664 F.3d at 46 ("[A]lleged time and money expenditures to monitor [] financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' . . . .").

### III. PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS ON BEHALF OF STATEWIDE CLASSES FOR FLORIDA, TEXAS, MAINE, AND NEW JERSEY

A plaintiff can only represent a class of which he is a part.  *See Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962).  Yet, here Plaintiffs, who are New York and California residents (FAC ¶¶ 9-11), wish to represent statewide classes comprised of residents of Florida, Texas, Maine, and New Jersey for claims of common law negligence and negligence *per se*.  (*Id*. ¶ 7.)  Because Plaintiffs allege no injury in these jurisdictions, they cannot represent these classes and any claims brought on behalf of these classes must be dismissed.

In order to represent members of the statewide classes for Florida, Texas, Maine, and New Jersey, Plaintiffs must establish the requisite case or controversy with CLA under the common laws of these states.  *See O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.")*; see also In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (dismissing claims based upon state law when no named representatives were residents of those state).  Plaintiffs' causes of action for negligence and negligence *per se* arise under only the common law of California and New York.  They do not allege and cannot allege that they sustained any injury in Florida, Texas, Maine, or New Jersey that would be redressable by those states' laws as residents of California and New York.  Therefore, Plaintiffs do not have standing to bring claims on behalf of statewide classes in these states.

### IV. PLAINTIFFS FAIL TO STATE CLAIMS FOR NEGLIGENCE AND NEGLIGENCE *PER SE* UNDER CALIFORNIA AND NEW YORK LAW

Plaintiffs' failures to allege sufficient harm for the purpose of Article III standing also means that Plaintiffs fail to properly state claims for negligence and negligence *per se*.  To state a

claim for negligence, a party must claim (1) the existence of a duty; (2) a breach of this duty; and (3) injury as a result of the breach.  *See Akins v. Glens Falls City School Dist.*, 53 N.Y2d 325, 333 (1981); *see also U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal 3d 586, 594 (1970) .

A claim of negligence *per se* creates a rebuttable presumption that a duty is owed and was breached, but the claim still requires allegation of harm.  *See* Cal. Evid. Code § 669(2); *see also Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 558 (2009); *see also 154 E. 62 LLC v. 156 E 62nd St. LLC*, No. 155966/2016, 2017 N.Y. Misc. LEXIS 2860, at *23 n.4 (N.Y. Sup. Ct. July 21, 2017) (citing *Sheehan v. City of New York*, 40 N.Y. 3d 496, 501 (1976)).

As outlined in Section II, *supra*, Plaintiffs fail to allege any injury in fact or certainly impending harm.  Plaintiffs' claims that they might suffer some unspecified harm in the future are insufficient to state a claim for negligence or negligence *per se* and therefore must be dismissed.  *See Shafran v. Harley-Davidson*, No. 07 Civ. 01365, 2008 U.S. Dist. LEXIS 22494, at *9-10 (S.D.N.Y. Mar. 24, 2008) (dismissing complaint in data breach litigation because the alleged injuries were "solely the result of a perceived and speculative risk of future injury that may never occur."); *see also Hammond*, 2010 U.S. Dist. LEXIS 71996, at *34-35 (granting summary judgment to defendants in data breach litigation because, among other things, claims of hypothetical future injury were insufficient as a matter of law to establish damages); *see also Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 857 (1990) (holding that no cause of action for negligence existed when it was premised only on the hypothetical future risk that product may malfunction in the future); *see also Missud v. Oakland Coliseum Joint Venture*, No. 12-02967 JCS, 2013 U.S. Dist. LEXIS 29915, at *61 (N.D. Cal. Mar. 5, 2013) (dismissing claim for negligence because it alleged no injury or damages).

## V.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

Section 17204 of the UCL contains an explicit injury provision.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).  To state a claim under the UCL, a plaintiff must allege an economic injury.  *See* Cal. Bus. & Prof. Code § 17204 ("Actions pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction…by a person who has suffered injury-in-fact and has lost money or property as a result of the unfair competition."). Specifically, Plaintiffs must also allege that they have lost "money or property" to maintain an action under the UCL.  *See Smith v. Sabre Corp*, No. 2:17-cv-05149-SVW-AFM, 2017 U.S. Dist. LEXIS 221783, at *12-13 (C.D. Cal. Oct. 23, 2017).  While Plaintiffs claim a heightened risk of identity theft and potential future time and money spent on mitigation of identity theft risk, these claims do not suffice as an injury under the UCL.  *See Smith*, 2017 U.S. Dist. LEXIS 221783, at *13-16 (dismissing cause of action under the UCL because time and effort of monitoring for fraudulent activity did not satisfy the economic injury requirement of the UCL). Plaintiffs have failed to allege any actual loss of money or property, and as a result they have failed to state a claim under the UCL.

## VI.    NEW YORK'S BREACH NOTIFICATION STATUTE DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION

Included in Plaintiffs' Second Claim for Relief is a negligence *per se* claim based upon New York's breach notification statute, GBL § 899-aa(2), and in their Third Claim for Relief a direct cause of action brought under the same statute.  But New York's breach notification statute does not provide for a private right of action.  Rather, only the attorney general of New York is entitled to bring action under New York's breach notification statute.  GBL §899-aa(2)(6).  As a result, Plaintiffs' claims premised on New York's breach notification statute must

be dismissed.  *See Abdale v N. Shore-Long Is. Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 857 (N.Y. Sup. Ct. 2015).

In the absence of an express private right of action within a statute, New York law only permits a plaintiff to use a statute to seek relief if an implied private right of action exists.  New York courts consider three factors to determine whether a private right of action is implied: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme."  *Sheehy v. Big Flats Community Day*, 73, N.Y.2d 629, 633 (1989).  The third factor is the most important, and a private right of action will not be implied by the judiciary if it is not compatible with the enforcement mechanism chosen by the Legislature.  *Id*. at 634-35.

Where the Legislature considered and expressly provided for an enforcement mechanism within the statute itself—as with Section 899-aa—the New York Court of Appeals has consistently declined to imply a private right of action.  *See Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61 70-71 (2013).  This is true even when the plaintiff is a member of the class for whose benefit the statute was enacted and recognition of the private right of action would promote the legislative purpose.  *Id.*  Because New York's breach notification statute provides for a clear enforcement mechanism via the attorney general, no implied private right of action exists under the law.  *See Abdale*, 19 N.Y.S.3d at 857 (declining to find a private right of action for negligence *per se* based upon GBL § 899-aa(2)).

**CONCLUSION**

Based upon the foregoing, this Court should find that it lacks subject matter jurisdiction, Plaintiffs' have failed to state a claim for relief, and Defendants' Motion to Dismiss should be granted.

Dated:  New York, New York
        December 21, 2018

Respectfully Submitted,

MORRISON & FOERSTER LLP

By: __s/ Michael B. Miller_____
    Michael B. Miller
    Jeffrey K. Rosenberg
    Janie C. Buckley
    250 West 55th Street
    New York, NY 10049
    Telephone:  212-468-8000
    Facsimile:  212-468-7900
    Email:  MBMiller@mofo.com
    Email:  JRosenberg@mofo.com
    Email:  JBuckley@mofo.com

*Attorneys for Defendants Carlos Lopez & Associates, LLC and Carlos Lopez*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2018 a copy of the foregoing **DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was served by
CM/ECF on counsel of record.


    __s/ Michael B. Miller_____

        Michael B. Miller